```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF FLORIDA
 2                      ORLANDO DIVISION

 3          Case no.:  6:12-cv-1610-Orl-37TBS

 4  ABB TECHNOLOGY LTD. and ABB, INC.,   )  Orlando, Florida
                                         )  February 8, 2013
 5                Plaintiffs,            )  1:56 p.m.
                                         )
 6                   v.                   )
                                         )
 7  HYUNDAI HEAVY INDUSTRIES CO. LTD.,   )
                                         )
 8                Defendants.            )
    _____)

 9

10

11

             Transcript of a preliminary pretrial conference
12
                 before the Honorable Roy B. Dalton, Jr.
13
                     United States District Judge
14

15

16

    Appearances:
17
    Counsel for Plaintiffs:  Steven C. Cherny
18                            Adam R. Alper
                              T. Todd Pittenger
19

20  Counsel for Defendant:   William J. McCabe
                              Lara J. Tibbals
21

22  Court Reporter:          Diane C. Peede, RMR, CRR
                              United States Courthouse
23                            401 West Central Blvd., #4600
                              Orlando, Florida  32801
24                            (407) 615-0305

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer.
```

```
 1                      P R O C E E D I N G S

 2             THE COURT:  Good afternoon.  We're here for ABB

 3   Technology, Ltd., versus Hyundai Industries, case number

 4   6:12-civil-1610.

 5             Counsel, if I could get your appearances for the

 6   record, please.

 7             MR. CHERNY:  Steve Cherny from Kirkland and Ellis

 8   on behalf of ABB.

 9             THE COURT:  Thank you.  What's your last name

10   again?

11             MR. CHERNY:  Cherny, C-h-e-r-n-y.

12             MR. ALPER:  Welcome, Mr. Cherny.

13             MR. CHERNY:  Thank you.

14             MR. ALPER:  Good afternoon, Your Honor.  Adam Alper

15   from Kirkland and Ellis for ABB.

16             THE COURT:  Good morning, Mr. Alper.

17             MR. PITTINGER:  Todd Pittinger with Akerman

18   Senterfitt, also for ABB.

19             THE COURT:  Good morning, Mr. Pittinger.

20             And for Hyundai?

21             MS. TIBBALS:  Yes.  Good afternoon, Your Honor.

22   I'm Lara Tibbals with Hill, Ward, Henderson on behalf of the

23   defendant, along with Bill McCabe with Ropes and Gray, as

24   trial counsel.

25             MR. McCABE:  Good afternoon, Your Honor.
```

1          THE COURT:  Good afternoon, Ms. Tibbals and Mr.

2     McCabe.

3          All right.  We're here for a Rule 16 preliminary

4     pretrial conference in this patent case, generated primarily

5     because of the disparity between the submissions of the

6     parties in terms of setting a timetable.  So what I would

7     like to accomplish this afternoon is to get some parameters

8     for timing in place.  I'll give you my guidance about what

9     the Court's preferences are for setting the time tables, and

10    then when we leave here today, hopefully you all will have a

11    good understanding of what the schedule will be, so that once

12    the Case Management and Scheduling Order is entered, we'll be

13    able to get the case moving with dispatch and we won't have

14    the need for any applications for extensions of time or

15    other -- everybody will have a good idea as to what they need

16    to do in order to get the case accomplished and in an

17    appropriate amount of time.

18          I don't know who wants to speak, Mr. Cherny, from

19    your team, but give me a little overview about what the

20    patent is that's involved in this case, and if you think

21    there's anything about it that adds to the complexity or

22    renders it more simple than, if there is such a thing, your

23    ordinary patent case, why don't you edify me a little bit

24    about what's at issue here.

25          MR. CHERNY:  Well, the patent relates to a

1  mechanical switchgear for power generation; and what makes it

2  simpler than the ordinary patent case, and there is -- both

3  me and Mr. McCabe have both practiced for some time.  We

4  actually were former partners and are still friends.  We

5  spend our days doing this stuff.  And at least from my

6  perspective what makes this case, at least the patent,

7  simpler is that it's a very short patent.  There's one

8  independent claim.

9           An independent claim in the parlance of the patent

10  world is that claims are written --

11           THE COURT:  I know what it is.

12           MR. CHERNY:  I apologize, Your Honor.  Any time

13  that I'm repeating myself or saying something you know, I'm

14  happy to hear it.

15           THE COURT:  No problem.

16           MR. CHERNY:  So there's only one independent claim.

17  It's a relatively short patent.  As far as we know, there's a

18  relatively discrete number of products that would be involved

19  here.

20           So this is not the typical eight patent case that

21  cover a vast number of different inventors unrelated.  We

22  have a set of three inventors, two of whom are in the control

23  of ABB, one of whom we are working with in order to make sure

24  that we will have control.  We do not at this point have

25  confirmation of that.  We have one independent claim and a

1    discrete set of issues.

2            So, compared to most of the patent cases I deal

3    with, it's actually pretty focused and pretty simple.

4            THE COURT:  Okay.

5            Mr. McCabe, do you want to chime in on that or do

6    you agree?

7            MR. McCABE:  I'm happy to chime in, Your Honor.

8    And I agree that we were partners and we're still friends.

9    We're very agreeable.

10           THE COURT:  That's a start, anyway.  We've agreed

11   on something.

12           MR. McCABE:  And we want to keep it that way for

13   the case.

14           Your Honor, with respect to the patent, it's a

15   mechanical patent.  I don't think the patent itself is overly

16   complicated.  I think what is more complicated in this case

17   maybe than a typical case is that the parties are both

18   foreign parties.

19           The plaintiff, ABB, is located in Switzerland.  Mr.

20   Cherny has said that two of the three inventors are under

21   ABB's control.  I'm not sure about the third one.  I'm not

22   sure what that means in terms of trying to take their

23   depositions.

24           On the flip side, the defendant, Hyundai Heavy, is

25   located in South Korea, and the vast majority of the

1   witnesses and likely the documents will be in Korean.  So

2   there will be language issues in terms of going and

3   collecting documents and taking discovery.  It's

4   significantly more involved, given the travel distances, the

5   time differences and the language challenges.

6           In terms of 18 months versus 24 months, I think

7   that's what the parties are disputing here; and I would like

8   to point out that the patent itself expires in two years.  So

9   it's been -- it's nearly at the end of its life.

10          We have a laches defense.  We've had products some

11  of the products on sale more than six years before the

12  lawsuit was filed.  So there will be issues about trying to

13  reach back in time for discovery, whether it's back nearly 20

14  years ago from what was done in terms of invention date back

15  in the early '90s, that may take a little bit more time.

16          In terms of what products were on sale, looking

17  into that may take a little bit more time just because

18  documents were kept in different ways back then.

19          With respect to the patent expiring, I would say,

20  what's the rush?  There's probably little hope of injunctive

21  relief here because of the long wait.

22          MR. CHERNY:  Your Honor, may I respond?

23          THE COURT:  Sure.

24          Let me ask you, Mr. McCabe, Mr. Cherny, will you

25  both be lead counsel?  Will you be trying the case?

1           MR. CHERNY:  Yes.

2           MR. McCABE:  Yes, Your Honor.

3           MR. CHERNY:  And when I answered your question, I

4    focused more on the specifics of the simplicity of the

5    patent.  So I just want to respond to some of what Mr. McCabe

6    addressed in terms of the complexities.

7           First, Mr. McCabe and in this joint status report

8    talk about some of the contingent problems potentially that

9    will happen relating to discovery; and these are both very

10   large firms that are very used to dealing with international

11   companies, and I have to say that I'm in no way sure that any

12   of these problems will occur.  So, from my perspective, it's

13   not a reason to slow the case down because there's a

14   possibility that there may be language issues that no one yet

15   has identified.

16          Now, on the other side, this goes to actually

17   something Mr. McCabe said directly, which is the patent is

18   going to expire in a couple of years.  And what's happened,

19   putting aside whatever allegations or laches they have, ABB

20   very much is seeking injunctive relief here.  In fact, that's

21   at the core of what they need.

22          There have been times in the past where ABB has

23   talked to HHI in order to try to resolve this.  In fact, the

24   most recent was just before this case was filed, and without

25   pointing fingers, an inquiry was made.  There was an

assurance again that there would be a response.  A response

didn't occur, and then we brought the case.

So we're at the point now where, to the contrary,

the fact that the patent is going to expire in March of 2015

argues for moving it forward, because otherwise then the

schedule essentially renders the possibility of injunctive

relief moot, and that's not the way it should be.

We can get this case done in 18 months and give the

Court full time if we went as we expect to adjudge within the

remaining year whether injunctive relief is appropriate.  And

there's no deadline that says that somehow if you only have a

year potential of injunctive relief, then you don't deserve

it.

ABB's patent is presumed valid.  We think it's

infringed.  We've talked to HHI about it.

HHI has known about this patent for a while.  So

it's not something that they can say that they haven't been

prepared for or they're just being taken by surprise about.

They're familiar with the patent.  They're familiar with the

claims and the claim terms.

So at this point for ABB, the strongest reason why

it wants to move forward is the very real fact that this

patent is going to expire in 2015, and if the schedule is

pushed out the way HHI wants, it may very well be able to run

out the clock on injunctive relief.

1           So I understand that HHI doesn't think that

2    injunctive relief is a possibility here, but that's going to

3    the merits of the issue.  It shouldn't be determined by the

4    timing of the schedule.

5           THE COURT:  Okay.  Let me tell you what I have

6    roughed out in terms of I have a Case Management and

7    Scheduling Order that's a little different in patent cases

8    than the one that may be posted online.  So I'll tell you

9    what the categories will include, and then I'll tell you what

10   my dates are that I've punched in there and I'll give you all

11   an opportunity to respond to those dates.  Not surprisingly

12   it comes out a little bit between your two proposals.

13          If we start off with the motions to add parties or

14   amend pleadings at April the 30th of 2013 -- I'm presuming,

15   by the way, that I'd be able to get a Case Management and

16   Scheduling Order out sometime within five or seven days from

17   the time that we leave here.

18          I see Ms. Flick wincing down there in front of me.

19   Even though I'm not looking at her face, I know she's

20   wincing.  But I think we could probably do that.

21          If we had April 30th of this year as adding parties

22   or amending pleadings, and that would include any claims, if

23   there are going to be any claims for inequitable conduct,

24   that those would be made within that time frame.

25          Then March 15, 2013, disclosure of infringement

1  contentions.  My order specifies essentially what those

2  disclosures would need to entail, all of which I'm sure are

3  very familiar to the two of you.

4         Then April the 15th of -- April the 15th would be

5  disclosure of non-infringement and invalidity contentions.

6  Again, the order specifies fairly clearly what those entail.

7  Again, none of it's surprising to people that practice patent

8  law.

9         Then April the 29th of 2013 I'd have the initial

10  identification of disputed claim terms between the two of you

11  all.  I'm going to limit the number of terms to be construed

12  to eight, absent leave of Court, which would not be freely

13  given.  I might tell you that I think eight terms is gracious

14  plenty, it seems, in a case of the sort that's been described

15  to me.

16         So then I would look for you all to exchange your

17  proposed claim term instructions on or before May the 29th.

18  If there's going to be any reliance on advice of counsel,

19  defense, I'd want that disclosed on or before June the 5th,

20  2013.

21         Then I'd look for you all to submit a joint claims

22  construction statement to the Court on or before June the

23  12th, 2013.

24         I don't want to be presumptuous, but it doesn't

25  sound to me like a technology tutorial or anything like that

1  is going to be required.  I'm open to doing it if you all

2  think it would be helpful.

3          MR. McCABE:  I would only say at this point, Your

4  Honor, it is a mechanical case -- and I don't know if Your

5  Honor has looked at the patent or looked at the claims -- and

6  sometimes just when you jump into a mechanical case, the way

7  they're written, it sometimes begs for a tutorial just to map

8  it out for you.

9          THE COURT:  I'm happy to have one.  I'm also

10 sensitive to the fact that these cases are expensive to

11 litigate and I know you all have clients to answer to.  I

12 don't want to just order a tutorial in order to spend your

13 client's money; but if you think it would be helpful to the

14 Court, obviously, I'm interested in doing it and willing to

15 do it.

16          MR. CHERNY:  I'm happy to talk to Mr. McCabe,

17 because, obviously, we hadn't broached the topic beforehand,

18 and I'm positive that we can come up with something between

19 us that works for both of us and, hopefully, works for the

20 Court.

21          THE COURT:  Okay.  Well, I will plug in then a date

22 for a technology tutorial conference into the Case Management

23 and Scheduling Order; that if you all give me some joint

24 submission that you think a tutorial is not required, then

25 we'll just avoid it; but I'll put it in so that you at least

1  know what the timing would be.

2          So the timing for the tutorial then, we need to do

3  that within 14 days of the deadline for the submission of the

4  joint claim construction statement.

5          Then I'd like for the plaintiffs' claim

6  construction brief on or before July the 12th.  Defendant's

7  responsive brief on or before July the 26th.

8          I'd like to get a joint hearing statement from you

9  all, a prehearing statement from you all on or before August

10 the 2nd; and then schedule the claims construction hearing --

11 I may have to fudge this date, but somewhere around August

12 the 23rd.  I'll have to see what else I have going on; but

13 within that time frame, a few days either side of the 23rd,

14 we would set the claims construction hearing.

15         Again, from what you all have told me, I think the

16 time that's in my order, which is no longer than six hours,

17 ought to be gracious plenty, I would think, for a claims

18 construction hearing.

19         Then, following the hearing, if you all feel the

20 need to amend your infringement, non-infringement or

21 invalidity contentions, I need those amendments on or before

22 November the 22nd.

23         Close fact discovery on December the 23rd.

24         Look for disclosure of expert reports, wherever the

25 party bears the burden of proof, on or before January the

1    23rd of 2014.

2             Disclosure of rebuttal experts' reports on or

3    before February the 24th.

4             Look to close expert discovery on or before March

5    the 24th.

6             Look for dispositive and Daubert motions on or

7    before April the 24th.

8             Look for you all to do a personal meet and confer

9    to prepare the Joint Pretrial Statement on or before August

10   the 25th.

11            File a Joint Pretrial Statement on or before

12   September the 1st.

13            Deadline for filing any other motions other than

14   dispositive motions or Daubert motions -- that could include

15   motions in limine -- would be August the 18th of 2014.

16            I'll invite you to look closely at my order,

17   because I find, for whatever reason, that the lawyers either

18   don't read it or don't pay attention to it.

19            Motions in limine are disfavored.  You all ought to

20   be able to work most of those things out.  To the extent that

21   you can't work them out, file one motion that includes in an

22   omnibus fashion any requests that you have of the Court to

23   limit the introduction of evidence; and there's some page

24   limitations in there also, that, again, I don't generally

25   grant any relief from the page limitations.  Include all your

1    motions in limine in one submission.

2         We'd look to schedule a pretrial conference.

3    Again, I need some flexibility on the date because I don't

4    think I have my schedule set yet for 2014, but it would be

5    around the 16th of September of 2014; and looking to try the

6    case in the trial term commencing October the 1st.

7         It may be a little difficult to know now, but based

8    on what you've -- based on your familiarity with the patent

9    and what you think the proof will be, do you think this looks

10   like a week case or longer than a week?

11        MR. CHERNY:  On behalf of plaintiff, I mean, given

12   the simplicity of the patent and the relative straightforward

13   nature, I don't see any reason why it would go more than a

14   week.

15        THE COURT:  Mr. McCabe?

16        MR. McCABE:  I would expect a week as well, Your

17   Honor.

18        THE COURT:  Okay.  Then, last but not least, we

19   need to talk about mediation.  I'm presuming that you all

20   know a great deal about your product, about the infringement

21   allegations.

22        I'm sure you do, Mr. Cherny, since you wouldn't

23   have filed your Complaint had you not.

24        MR. CHERNY:  I sincerely hope so.

25        THE COURT:  And, Mr. McCabe, what do you all think

1    would be the most productive way to try to conserve the

2    resources of your clients and the Court's time in terms of

3    scheduling a mediation?

4              I see you have Jay Cohen penciled in.  That's a

5    good choice.

6              MR. McCABE:  Your Honor, HHI has suggested an early

7    mediation, before we get too deep into discovery.  We think

8    that would be productive.

9              Frankly, the products at issue are relatively older

10   products.  I'm not sure that they'll be --

11             THE COURT:  Mr. McCabe, would you come to the

12   podium, please.  The court reporter has a hard time picking

13   you up if you're not near a microphone.

14             MR. McCABE:  Certainly.  Your Honor, we suggest in

15   the filing an early mediation, in the springtime of this

16   year.  We think that the products at issue are probably very

17   limited.  We don't foresee a lot, if any more of them, coming

18   on the market that would fall within the scope of this.  So

19   we thought it would be a good way to conserve resources, and

20   we also suggested if we don't settle at that point or reach

21   an agreement at that point, to have another mediation

22   following the Markman order.

23             THE COURT:  What do you say, Mr. Cherny?

24             MR. CHERNY:  This is one of those things where I

25   don't have any great feeling against having early mediation.

1  I'm more concerned about the potential waste of resources and

2  the waste of Mr. Cohen's time.  I've mediated with him, and I

3  agree.  He's an excellent mediator and, obviously, very busy.

4       My concern is that there's some information.  I may

5  know the patent and something about Mr. McCabe's products or

6  his client's products.

7       Some of the stuff, I don't know about, for example,

8  like, the financial information.  That tends to drive a lot

9  of these issues, such that you usually need a certain amount

10  of discovery before you can have a mediation be worth

11  anything, because you need to know really what's the scope of

12  the case, what's the value of the case.

13       I tend to believe usually that the farther along

14  you go and you've had some discovery and you've had some

15  things occur to whittle down the case a little bit, that

16  mediation becomes more productive, because people worry that

17  they don't know enough to settle the case.

18       These parties have talked in the past, and I don't

19  have any basis, even though I do respect Mr. Cohen's skills,

20  to believe that anything would happen if a mediation were to

21  occur too soon, because I don't think anyone knows any more

22  now than they knew the last time they tried to talk.

23       So my concern would only be that we don't set a

24  mediation that's too early to have it be productive and not

25  just be a waste of resources and time.

1

2          THE COURT:  Tell me a little bit more about what

3    you think the financial information is that will help you

4    understand the scope of your damages associated with this

5    infringement if in fact you were to prevail.

6          MR. CHERNY:  So we know certainly the products that

7    we believe infringe.  We also need to take a look at

8    discovery to make sure we understand the full scope of

9    products that we allege infringe.  So part of it is just

10   tactical information of understanding the product scope.

11          Mr. McCabe has made some assertions regarding

12   changes in products and potential changes that he says would

13   bring new products outside the scope.  Of course, that's

14   obviously HHI's position and their information.  We need to

15   understand that, because that obviously will affect the

16   financial worth of the case and also the financial or the

17   worth of an injunction.

18          If it turns out that they have something that's a

19   change, that's different.  Then, of course, there is -- once

20   we've identified the products that we believe infringe,

21   knowing the sales of those products and some of the marketing

22   issues.

23          So it's really a matter of, A, coming up with a

24   list of the infringement contentions, as you've mandated,

25   based on, hopefully, free discovery from the other side in

1   terms of providing us technical documents and product

2   documents, so that we understand the full scope, because,

3   like any plaintiff, we have some visibility into the products

4   that they sell that infringe, but we don't have total

5   visibility into that nor do we have total visibility into the

6   new products that they are intending to enter into the

7   market.

8          So it just becomes an issue of trying to, A, define

9   the scope of products that we're fighting about; and then

10  once we define that scope, figuring out what the sales of

11  those products are.

12         Like I said, if it turns out that they really

13  aren't going to be selling products in the United States that

14  fall within the scope of this proceeding, that also affects

15  whether this is an injunction case or a past damages case.

16         As far as we know right now, it's an injunction

17  case because we see current infringement, but we don't have

18  access to all that information.  So a lot of it depends upon

19  the sooner we get information from HHI about, you know, in

20  response to the discovery we've already propounded, we'd be

21  in a better position to answer the question of, you know,

22  whether a mediation early could help or not help at this

23  point.

24         THE COURT:  Okay.  Well, they're going to be

25  obligated to provide you with their non-infringement and

```
 1    invalidity contentions on or before April the 15th of 2013.

 2              Then you all will need to get together to talk

 3    about your disputes over claim terms, if there are disputes

 4    over claim terms, by April the 29th.  Then you'll owe me --

 5    you'll owe each other, actually, your proposed claim term

 6    constructions by May the 29th.

 7              So it looks to me like the month of May may be a

 8    sweet spot in terms of trying to get a mediation.

 9              MR. CHERNY:  And as long as at that point we've

10    also gotten financial discovery also, so we understand the

11    scope of the infringing sales, then I have no problem with

12    having a mediation.

13              THE COURT:  All right.

14              I'll establish then probably June 1st or whatever

15    the first Monday is in June as a deadline for mediation; but

16    I want to encourage you both, to the extent that I can -- you

17    all know this as well or better than I do -- that once this

18    machinery gets set in motion, no pun intended, with respect

19    to grinding out the Markman and you all working hard on your

20    claims construction and trying to scrutinize your

21    infringement allegations and all of the work that begins to

22    go into that, it's very easy to take your eye off the ball

23    and lose sight of the fact that ultimately it may be in your

24    respective client's best interest to recognize that at the

25    end of the day, there are going to be some things that we
```

1   just don't agree about and that there's probably some middle

2   ground, you know, where the case could be resolved.

3          I just want to encourage you to try to stay focused

4   on the prize and not get caught up in the process.  The prize

5   is, obviously, I mean that in the context of a just

6   resolution for the both of you in terms of this litigation,

7   which, as you know, can be costly and time-consuming and --

8   well, you know all that without me describing it to you; but

9   I want to make sure that if there's an opportunity to resolve

10  the case on the front end, that we seize it and we don't let

11  it get lost in the shuffle.

12          MR. CHERNY:  Understood, Your Honor.

13          THE COURT:  So I'll put June 1st then in for a

14  deadline for -- you may not have talked to Mr. Cohen yet; but

15  if you haven't, you probably should pretty soon, because my

16  guess is his schedule will fill up; and I know you all come

17  from different parts of the country.  So trying to get

18  everybody together to get the matter scheduled will probably

19  take some forethought.

20          Is there anything else that either of you know

21  about the litigation presently that, since we're all gathered

22  here together, we could discuss and try to make efficient use

23  of our time?  Is there anything I could be helpful with?

24          MR. McCABE:  Your Honor, the only thing I would

25  just bring to the Court's attention, it was somewhat

1    mentioned in our papers, and Mr. Alper and I have talked

2    about this, is just trying to take discovery of witnesses

3    that are outside the United States.  So we may need to come

4    back to the Court, whether it would be to get help through

5    the Hague Convention or locations of where these depositions

6    can take place.

7             As I'm sure Your Honor is aware, some countries

8    really do not allow depositions on their soil or, to the

9    extent you're allowed to take them, the conditions can be

10   very onerous.  Hopefully, we can work it you all out; and if

11   we can't, that may be an issue that would pop up.

12            THE COURT:  Well, let me just direct both of you

13   that within the next fairly short period of time, within the

14   next 30 to 45 days, I'd like for each of you to sit down and

15   take look at what you think your discovery trajectory looks

16   like, who your likely witnesses are, and then work

17   cooperatively to see how many of those people you all are

18   able to produce voluntarily without the need to go through a

19   complex international process-serving operation; and if you

20   can cooperate to that extent to avoid those problems,

21   obviously, that will streamline the prosecution of the case.

22            I'm certainly not asking you to do anything that

23   you think is detrimental to the interest of your client, but

24   let's not put form over substance in terms of trying to get

25   the discovery that both of you are going to need.

1          MR. CHERNY:  And as Mr. McCabe has said, this is

2    something that we've talked about; and as far as I can tell,

3    there's no disagreement as of yet to address with the Court.

4    I mean, we're going to work to cooperate.  We both have

5    clients that are overseas.

6          So, from my perspective right now, I'm happy to

7    talk to, as is Mr. Alper, Mr. McCabe and his team and do our

8    best to work it out.

9          THE COURT:  All right.

10          MR. McCABE:  Your Honor, I just bring it to your

11    attention, because Mr. Cherny pointed out that two out of --

12    I think two out of three of the inventors, ABB has some

13    control over.  It's possible a third one, you know, may be

14    off on his own.

15          Likewise, there may be some Hyundai witnesses that

16    may be former employees that we may not have control over.

17    So this issue could come up, and I wanted to alert the Court

18    to that.

19          THE COURT:  I appreciate that.  In an effort to try

20    to make sure we don't get behind the power curve because of

21    that, what I'm going to do is require each of you in 30 days

22    to exchange a list of any international witnesses that you're

23    aware of that you know now -- again, I'm not saying that you

24    can't amend the list at some point in time, but witnesses

25    that you know now that may be outside the jurisdiction of the

1    court in terms of subpoena power, whether it's international

2    or otherwise, and that you all, once you have that list, then

3    30 days later you respond to the other party as to whether or

4    not you're going to be able to produce that individual or you

5    think within -- again, that you think, realistically, you

6    should be able to produce that individual, assuming you don't

7    have somebody that's not going to be cooperative, for

8    whatever reason, and then at least then we should be able to

9    figure out if we have one or two people that are going to be

10   problematic, we can deal with that.

11           So I'll put the onus on you, Mr. Cherny, to deliver

12   your list within 30 days to Mr. McCabe.

13           Well, the first disclosure will be mutual.  Mr.

14   McCabe, if you know of some.  Mr. Cherny.  Then you all

15   respond back to each other 30 days thereafter.

16           Then, hopefully, if there are any that you know are

17   going to be a problem, it might be a good idea to make

18   application to the magistrate judge to see if we can't do

19   something to be helpful to try to move the service of process

20   issues along, because, as both of you know, if we get caught

21   up in Hague Convention, then it becomes very difficult, if

22   not impossible, for the Court to control.

23           MR. CHERNY:  We understand that.  Obviously, I

24   think the Court alluded to this process will have to be

25   somewhat iterative, because his witnesses that we know of and

1   that they know of now, I'm sure, but, obviously, until we see

2   each other's documents and people start identifying people

3   who are knowledgeable through the interrogatory process,

4   we'll then learn more about some of the witnesses we actually

5   need to talk to.

6           THE COURT:  I understand.  As I said, this list is

7   not intended to be a limitation on your ability to augment it

8   as you learn of additional information, but at least then

9   we'll have this initial round of folks that you both know

10  about out of the way.

11          MR. CHERNY:  Of course.

12          MR. McCABE:  Thank you, Your Honor.

13          THE COURT:  All right.  Thank you, Mr. McCabe, Mr.

14  Cherny.  Is there anything else that you're aware of that we

15  might be able to get accomplished this afternoon?

16          MR. McCABE:  Not from Hyundai, Your Honor.

17          MR. CHERNY:  Not from ABB, Your Honor.

18          THE COURT:  All right.

19          Well, I'm sorry to make you travel for a relatively

20  short conference, but I do think that this time is time well

21  spent and it'll save us a lot of heartache and a lot of

22  motion practice down the road, because I do want you to know

23  that once this Case Management and Scheduling Order is

24  entered, you know, unless somebody is in the hospital or

25  something of the like, these dates are not likely to be

1  modified.  So you can communicate that to your respective

2  clients and make sure that everybody that's working on the

3  case on your behalf understands that these deadlines are not

4  advisory.

5          MR. CHERNY:  Understood.

6          THE COURT:  Great.

7          Well, thank you for coming in.

8          (Proceedings terminated at 2:28 p.m.)

9          - - - - - - - -

10             Reporter's Certification

11  I certify that the foregoing is a correct transcript from the

12  record of proceedings in the above-entitled matter.

13                    s/Diane Peede, RMR, CRR
                      Official Court Reporter
14                    United States District Court
   Date:  February 12, 2013   Middle District of Florida
15

16

17

18

19

20

21

22

23

24

25